## Mannin v. Adkins.

(Decided May 18, 1223.)

## Appeal from Elliott Circuit Court.

1.  Mines and Minerals—Right of Grantor to Take Coal from Land Held Personal, Not Running with the Land.—A clause inserted in a deed, that grantor was to have coal for fuel for home consumption from the land conveyed in return for a passway to grantee over grantor's land, gave a right to take coal which was limited to the personal consumption by grantor, and was therefore a personal right not running with the other land of grantor over which the passway was granted.

2.  Covenants—Passway Over Land of Grantor Held Covenant Running With the Land.—A clause giving a grantee the use of a passway over the other land of the grantor for an outlet from the lands therein conveyed which was necessary to a full enjoyment of the lands conveyed, created an easement running with the land.

CLAY & HOGGE, ALLIE W. YOUNG and M. M. REDWINE for appellant.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Reversing.

Several years ago W. C. Adkins sold to William Adams a boundary of land in Elliott county and conveyed the same to him by deed of general warranty. The home farm of Adkins adjoins this land. After the deed was made Adams found that he needed a passway or road over the home place of Adkins. The deed not having been recorded it was agreed between Adkins and Adams that an interlineation should be made and the following paragraph was placed in the deed:

"And it is further agreed and understood between the parties that W. C. Adkins is to have, use and get coal off the lands hereby conveyed (to Adams) for fuel for his own purposes or home consumption as fuel, and that said William Adams is to have the use of a passway over and through the lands of W. C. Adkins for a passway for an outlet from the lands herein conveyed."

The deed was then placed to record. Soon afterwards Adkins conveyed his home place over which the passway was granted, to his son, Cox Adkins. Some time thereafter he died. Adams sold his boundary and

it passed through several conveyances until it reached appellee, W. J. Mannin. After the death of W. C. Adkins, the owner of the Adams land, Mannin conceived the idea that the coal right granted by the clause above quoted was personal to W. C. Adkins and did not pass to his successors in title and was not a covenant running with the land, and Mannin notified Adkins that his right to coal had ceased, and began to claim the entire title to the coal in his said boundary. Thereupon Cox Adkins, the owner of the home place of his father, brought this action against Mannin in the Elliott circuit court, praying that Mannin be perpetually enjoined from interfering with plaintiff Adkins' right to get coal on the lands of the defendant, and if this could not be done, then he prayed that the defendant be perpetually enjoined from using the passway over the plaintiff's lands.

The trial court granted plaintiff's prayer insofar as it sought to enjoin the defendant, now appellant, from interfering with the plaintiff's right to take coal from the lands of the defendant. From this judgment Mannin appeals.

The determination of this appeal therefore depends entirely upon the construction placed upon the paragraph of the deed above quoted. Adkins was to have coal for fuel for home consumption off the land that was sold by Adkins to Adams and in return Adams was to have the passway over and through the lands of Adkins, "as a passway for an outlet over the lands herein conveyed." The privilege of taking coal from the Adams land was given to Adkins for "fuel for his own purpose or home consumption." It would therefore appear that Adkins could take coal only for his own domestic use to be consumed by him and those dependent upon him for fuel and not for the persons who might succeed to the title of the land which he then held. In other words, if Adkins had immediately after making the deed containing the above copied clause removed to another farm and made his home there ever after, he could have taken coal from the Adams land under his said reservation, but such taking would have been confined to domestic purposes for home consumption and could not have been devoted to any other purpose. He could not have sold it or furnished it to another, or used it in furnaces or engines to carry on a business on his premises. The right was therefore necessarily personal to W. C. Adkins and did not pass to his successors in title.

On the other hand the roadway by Adkins to Adams was appurtenant to the lands conveyed with it by Adkins to Adams and the clause in the deed makes this quite plain, reading:

"Said William Adams is to have the use of a passway over and through the lands of W. C. Adkins for a passway for an outlet over the lands herein conveyed."

Adkins was selling and conveying to Adams a boundary of land which needed an outlet. The tract of land was described in the same deed in which the passway was granted. The passway was established and regularly used ever since. The outlet from the lands sold to Adams appears to have been necessary and was granted as appurtenant to the lands sold to Adams. It was necessary to the full enjoyment thereof. Such an easement runs with the lands.

The trial court held that the privilege of taking coal from the lands granted by Adkins to Adams was perpetual, running with the lands, and that appellee Cox Adkins, being the owner of the tract formerly owned by his father, W. C. Adkins, was entitled to take coal for domestic purposes from the lands conveyed to Adams and by mesne conveyances to Mannin. This was error, requiring a reversal of the judgment.

Judgment reversed.